UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS RAMIREZ DIAZ,<br><br>                      Plaintiff,<br><br>v.<br><br>CHAD WOLF (Acting Secretary of Homeland Security); MELISSA MAXIM, Director USCIS, San Diego,<br><br>                      Defendants. | Case No.: 19cv1044 JM(NLS)<br><br>**ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |

      Presently before the court is Plaintiff Carlos Ramirez Diaz's (Diaz) Motion for Summary Judgment (Doc. No. 20) and Defendants' Cross Motion for Summary Judgment (Doc. No 25). The motions have been fully briefed and the court finds them suitable for determination on the papers submitted and without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the reasons set forth below Mr. Diaz's motion is **denied**, and Defendants' motion is **granted**.

## Background

      On June 4, 2019, Mr. Diaz filed the instant action, petitioning the court for de novo review of denial of his naturalization application pursuant to 8 U.S.C. § 1447(b)[1].

---

[1] The court notes that the petition refers to Mr. Diaz as "Mr. Quintero" but for purposes of this motion, it will assume these were typographical errors. (*See* Doc. No. 1 at 1, 2, 3.)

1

Mr. Diaz was born in Mexico in 1955. (Doc. No. 19-1 at 24[2].) On December 1, 1990, he became a lawful permanent resident of the United States of America. (Doc. No. 19-1 at 11.) On October 30, 1998, Mr. Diaz was arrested by the Police Department of Chula Vista, California, for possession of marijuana for sale, in violation of Health and Safety Code 11359. (Doc. No. 19-1 at 125; Doc. No. 19-2 at 58-60.) On January 13, 1999, Mr. Diaz was convicted of violating HS 11359, an aggravated felony, and sentenced by the Superior Court of California, County of San Diego, to serve 365 days in jail and 3 years' probation. (Doc. No. 19-1 at 125; Doc. No. 19-2 at 48-55.) On March 7, 2014, a petition for relief filed by Mr. Diaz was granted, with the Superior Court withdrawing Mr. Diaz's guilty plea to the original HS11359 charge and allowing him to plead guilty to PC 32, accessory after the fact, a misdemeanor. (Doc. No. 1 at 7.)

On January 19, 2016, Mr. Diaz applied for naturalization[3]. (Doc. No. 19-2 at 15-33, 39.) In a letter dated April 28, 2017, United States Citizenship and Immigration Services (USCIS) informed Mr. Diaz of its denial of his application, stating because he "had been convicted of an aggravated felony on or after November 29, 1990, [he] was permanently barred from establishing good moral character. Therefore, [he was] ineligible for naturalization." (Doc. No. 19-2 at 4-5.)

On May 30, 2017, USCIS received Mr. Diaz's Form N-336, request for hearing. (Doc. 19-1 at 151-161.) A hearing on the denial of Mr. Diaz's application for naturalization was held on November 9, 2017. (*Id.* at 125.) The subsequent Notice of Decision issued

---

[2] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

[3] On April 14, 2000, Immigration and Naturalization Service denied Mr. Diaz's previous application for naturalization, finding him ineligible because he was still on probation until January 12, 2002, for his conviction for sale of marijuana in San Diego Superior Court on January 13, 1999. (Doc. No. 19-2 at 64-65.)

by USCIS informs that it was reaffirming its decision to deny Mr. Diaz's N-400 application writing:

> At the time of filing your N-336 the attorney of record submitted a brief arguing that the N-400 should be adjudicated based on the March 7, 2014 nunc pro tunc misdemeanor conviction of PC 32 (Accessory After the Fact) rather than considering the original aggravated felony conviction from January 13, 1999.  However, for immigration purposes the original aggravated felony conviction must still be considered.  If a conviction is changed for reasons solely related to rehabilitation or to avoid adverse immigration hardships rather than on the basis of a procedural or substantive defect in the underlying criminal proceedings then the conviction remains for immigration purposes. Matter of Pickering, 23 I&N Dec. 6321, 624 (BIA 2003).  You have provided no evidence to show that the change of conviction was due to procedural or substantive defect in the original conviction.

Doc. No. 19-1 at 125-126.

Mr. Diaz seeks review of USCIS' decision. (Doc. No. 1.)  On March 8, 2021, Mr. Diaz filed a motion for summary judgment. (Doc. No. 20.)  On April 7, 2021, the Government filed its opposition and cross-motion for summary judgment. (Doc. No. 21.) The parties duly filed timely replies.  (Doc. Nos. 22, 23, 24, 25.)

## Legal Standard

A district court has jurisdiction to conduct a *de novo* review of a petitioner's naturalization application pursuant to 8 U.S.C. § 1421(c) ("A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer ... may seek review of such denial before the United States district court for the district in which such person resides.... Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.").  A court may order a person naturalized if the person meets various statutory criteria, including those set forth 8 U.S.C. § 1427. *United States v. Hovsepian,* 359 F.3d 1144, 1165 (9th Cir.2004) (en banc).  In other words, courts do not have equitable authority to naturalize citizens otherwise ineligible under the law. *INS v. Pangilinan*, 486 U.S. 875, 885 (1988) ("Neither by application of the doctrine

of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of the[ ] limitations [imposed by Congress].").  The statutory criteria must be applied strictly, as "Congress alone has the constitutional authority to prescribe rules for naturalization, and the courts' task is to assure compliance with the particular prerequisites to the acquisition of United States citizenship ... to safeguard the integrity of this 'priceless treasure.'"  *Fedorenko v. United States,* 449  U.S. 490, 506–07 (1981) (quoting *Johnson v. Eisentrager*, 339 U.S. 763, 791 (1950) (Black, J., dissenting)).  "[T]he burden is on the alien applicant to show his eligibility for citizenship in every respect" and "doubts should be resolved in favor of the United States and against the claimant."  *Berenyi v. INS.*, 385 U.S. 630, 636–37 (1967).

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  But Federal Rule of Civil Procedure 56 contains "no express or implied requirement . . . that the moving party support its motion with affidavits or other similar materials <u>negating</u> the opponent's claim." *Id.* (emphasis in original).  The court must examine the evidence in the light most favorable to the nonmoving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962), and any doubt as to the existence of an issue of material fact requires denial of the motion, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**Discussion**

Mr. Diaz argues he sought and was granted a certificate of rehabilitation and pardon in state court pursuant to California Penal Code section 4852.01 and that this petition was granted "nunc pro tunc" to the date of his conviction. (Doc. No. 20 at 5.) He contends that "the following year Plaintiff motioned the Court for an order reducing the previous 365- day custody order to 364 also pursuant to CPC 4852.01." (*Id*.)  Mr. Diaz claims that

the result of both proceedings has been "to delete the initial conviction and its sentence into non-existence leaving only the accessory conviction." (*Id.*)

Notwithstanding Mr. Diaz's contention to the contrary, a certificate of rehabilitation is not an automatic pardon; rather it is an automatic application for a pardon. If a court issues a certificate of rehabilitation, the certificate of rehabilitation shall be reviewed by the Board of Parole Hearings within one year. (CAL. PENAL CODE §§ 4852.14, 4852.16(b).) Thereafter, the Board shall issue a recommendation as to whether the Governor should pardon that individual. (*Id.* § 4852.16(b).) Importantly, an expungement sought under section 1203.4 does not prevent the conviction from being used by USCIS for removal and exclusion purposes. *Ramirez-Castro v. INS*, 287 F.3d 1172, 1175 (9th Cir. 2002) ("In view of the fact that California Penal Code section 1203.4(a) provides only a limited expungement even under state law, it is reasonable for the BIA to conclude that a conviction expunged under that provision remains a conviction for purposes of federal law."); *People v. Vasquez*, 25 Cal. 4th 1225, 1231 (2001) ("section 1203.4 does not, properly speaking 'expunge' the prior conviction. The statute does not purport to render the conviction a legal nullity…[t]he limitations on this relief are numerous and substantial…."). Equally important, a Certificate of Rehabilitation sought under Penal Code section 4852.01 does not erase the record of conviction or necessarily prevent deportation. (*See* CAL. PENAL CODE § 4852.17.)

The overarching problem with Mr. Diaz's petition is a fundamental lack of documentation to support the claims made by his counsel. Indeed, as USCIS noted at the time of:

> [Plaintiff's] N-336 hearing the attorney of record also submitted documents related to the removal proceedings of an individual, Maximo Rogelio Ramirez, who has no connection with the instant case other than being represented by the same attorney of record. The specific details of this person's immigration case has no bearing on your case and your case will be adjudicated based on the facts related to your case.

Doc. No. 19-1 at 125-126; *see also id* at 138-148.  The court has not been provided with a certificate of rehabilitation issued by the Superior Court of California, County of San Diego, pursuant to either California Penal Code section 1203.4[4] or section 4852.01[5].  The only documents before the court are the "Felony Minutes-Pronouncement of Judgment Form," wherein the Superior Court stamped Plaintiff's filing as a Penal Code section 1203.4 petition and a 2-page "fill-in the blank" form, stamped "post-sentence minutes." (Doc. No. 1 at 7; Doc. No. 19-2 at 55.)  These documents, totaling 3 pages, do not establish that Mr. Diaz's aggravated felony conviction has been "deleted… into non-existence." And while Mr. Diaz's counsel did indeed revisit San Diego Superior Court in 2015, nothing in the administrative record supports Mr. Diaz's second contention that the sentence was reduced to 364 days "nunc pro tunc."  The 2-page "post sentence minutes" document dated September 25, 2015, simply indicates that Mr. Diaz was committed to the sheriff for 364 days.  (Doc. No. 19-2 at 55.)

Even assuming *arguendo,* the court had been provided with Mr. Diaz's Certificate of Rehabilitation, Mr. Diaz would remain "convicted" of the underlying aggravated felony

---

[4] The granting of a Certificate of Rehabilitation restores to the applicant some of the rights of citizenship which were forfeited as a result of a conviction. Defendants convicted of a felony, or a misdemeanor sex offense specified in California Penal Code section 290, and who were granted probation, must obtain relief pursuant to California Penal Code section 1203.4 before a Certificate of Rehabilitation may be granted.  *See* https://www.sdcourt.ca.gov/sites/default/files/sdcourt/generalinformation/forms/criminalforms/pkt016.pdf

[5] Any person who has been convicted of a criminal offense in California may apply directly to the Governor for a pardon.  The granting of a pardon restores to the applicant some of the rights of citizenship which were forfeited as a result of the conviction. The granting of a Certificate of Rehabilitation pursuant to California Penal Code section 4852.01 automatically serves as a recommendation and application to the Governor for a pardon.  *See* https://www.sdcourt.ca.gov/sites/default/files/sdcourt/generalinformation/forms/criminalforms/pkt016.pdf

for immigration purposes, unless the state court order made clear that its vacatur was based on "a procedural or substantive defect in the underlying proceeding." *Matter of Pickering*, 23 I. & N. Dec. 621, 624 (BIA 2003).  Prior to *Matter of Thomas & Thompson*, 27 I. & N. Dec. 674, 2019 WL 5546810 (A.G. Oct. 25, 2019), the Board of Immigration Appeals applied three distinct tests to consider the effect state-court orders modifying, clarifying, or otherwise altering a criminal alien's sentence will have for immigration purposes.  To end disparate outcomes in immigration cases that the application of these three distinct tests had engendered, the Attorney General wrote the order in *Matter of Thomas & Thompson*, 27 I. & N. Dec. 674.  He determined:

> Going forward, immigration courts should apply the test articulated in *Matter of Pickering* in determining the immigration consequences of any change in a state sentence, no matter how the state court describes its order.  Such an alteration will have legal effect for immigration purposes when based on a procedural or substantive defect in the underlying criminal proceeding, but not when the change was based on reasons unrelated to the merits, such as the alien's rehabilitation or an interest in avoiding an immigration consequence.

*Matter of Thomas*, 27 I&N. Dec. at 675.

The state court documentation pertinent to Mr. Diaz, which is currently before the court, appears to have been issued for rehabilitative purposes only.  Nothing indicates it was the result of a "procedural or substantive defect in the underlying proceeding." (*See* Doc. No. 1 at 7; Doc. No. 19-2 48-54, 55-56.)  Thus, the type of expungement sought by Mr. Diaz would have little to no effect for federal immigration purposes.  *See Prado v. Barr,* 949 F.3d 438, 441 (9th Cir. 2020) ("federal immigration law does not recognize a state's policy decision to expunge (or recall or reclassify) a valid state conviction.")*; People v. Camacho,* 32 Cal. App. 5th 998, 1004 (2019) ("Because possession of marijuana for sale is an 'aggravated felony' under federal law and was an aggravated felony at the time of defendant's plea (8 U.S.C. § 1101(a)(43)(B)), deportation and exclusion from readmission was and remains mandatory. [citations omitted.] Expungement under section 1203.4 has no effect on the federal immigration consequences of a conviction for such a felony."); *People v. Borja,* 95 Cal. App. 4th 481, 487 (2002) ( "To permit a court, years

after a person has pleaded guilty and the term has been served, to obtain a retroactive order altering the record in a manner so that the conviction could not be later used, violates that Legislature's clear intent and the rulings of the federal courts that prior convictions be available for future use, including, pursuant to the federal decisions, immigration consequences.").

Furthermore, in the case file, USCIS noted that even if Mr. Diaz's aggravated felony conviction was reduced to an accessory charge, being convicted of a controlled substance violation may also provide grounds for his removal. (*See, e.g.,* Doc. No. 19-1 at 10). Section 1227 of the Immigration and Nationality Act (INA) provides the grounds upon which an alien may be removed from the United States, with §1227(a)(2)(A) specifically enumerating various crimes which may constitute a basis for removal. The general crimes section includes: "crime[s] involving moral turpitude," "aggravated felon[ies]," "high speed flight from an immigration checkpoint," and "[f]ailure to register as a sex offender." 8 U.S.C. § 1227(a)(2)(A)(i)-(v). This provision also contains a section pertinent to pardons, wherein it is explained that convictions for crimes of moral turpitude, aggravated felonies, and high speed flight cannot serve as the basis for removal "if the alien subsequent to the criminal conviction has been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several States." *Id.* at § 1227(a)(2)(A)(vi). However, section 1227(a)(2)(B), which provides for removal of an alien "convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State ... relating to a controlled substance," contains no pardon waiver. In other words, Congress did not explicitly provide that a full pardon for a controlled substance conviction extinguishes the immigration consequences of that offense. *See Zumel v. Lynch*, 803 F.3d 463, 473 (9th Cir. 2015) ("Since Congress knows how to eliminate the immigration consequences of unlawful conduct when it wants to, we should not interpret congressional silence as accomplishing the same end."). Here, Mr. Diaz was convicted of possessing for sale 488 pounds of marijuana, a controlled substance. *See* 21 U.S.C. § 812 – Schedules of controlled substances. Not only is there no evidence that Mr.

Diaz has received a pardon from the Governor, thereby eliminating the aggravated felony ground for his removal, the plain text of § 1227 (a)(2)(B) prevents the pardoning of the controlled substance offense.

## Conclusion

In sum, this court is precluded by law from granting Mr. Diaz United States citizenship because he was convicted of an aggravated felony involving a controlled substance in 1999. Accordingly, the court **GRANTS** the Government's Motion for Summary Judgment (Doc. No. 21), **DENIES** Mr. Diaz's Motion for Summary Judgment (Doc. No. 20), and **DENIES** Mr. Diaz's Petition (Doc. No. 1).[6]

The Clerk of Court shall **CLOSE** this case.

IT IS SO ORDERED.

Dated: November 2, 2021

_____
Hon. Jeffrey T. Miller
United States District Judge

---

[6] The court does not intend this order to in any way prejudice applicant's status as a legal permanent resident.

9